UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEITH DAVIS WEINER,

        Petitioner,                          Case Number 00-10002-BC
                                                       Honorable David M. Lawson

v.

BARBARA N. BOCK,

        Respondent.
_____/

## ORDER ADOPTING IN PART REPORT OF THE MAGISTRATE JUDGE AND DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS

The petitioner, Keith Davis Weiner, a state inmate currently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, has filed through counsel a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of his federal constitutional rights. Weiner was the "wheel man" in an armed robbery that went awry and resulted in the shooting death of the intended robbery victim, Ernest Wallace, who was known, ironically, as "Lucky." Weiner was convicted of first-degree felony murder in 1977 by a Detroit, Michigan Recorders Court jury and sentenced to life in prison. Before trial, Weiner made a statement to police in which he acknowledged his participation in the robbery plan and denied that he intended the victim to be killed or harmed, confirmed that he did not go to the victim's store but rather waited in the getaway van, and asserted that he never touched a firearm during the transaction. All of these assertions were borne out by corroborating evidence. The statement was received in evidence at trial.

The petitioner raised claims in his habeas petition relating to the constitutional invalidity of his confession to the police, the sufficiency of evidence, jury instructions, production of a witness,

ineffective assistance of trial and appellate counsel, and the cumulative effect of these alleged constitutional errors. The State challenged the petition as untimely but failed to address the merits of the petition. The Court denied the respondent's motion to dismiss on statute of limitations grounds and found that the respondent forfeited her right to contest the merits, since she failed to comply with Rule 5 of the Rules Governing Section 2255 Cases in the Federal Courts (requiring that "[t]he answer shall respond to the allegations of the petition") and a previous order to answer the petition. Thereafter, the Court referred the case to Magistrate Judge Charles E. Binder for an evidentiary hearing, recommendation, and report. Magistrate Judge Binder completed the hearing, and after the parties filed post-hearing briefs he filed a sixty-nine-page, comprehensive report in which he recommended that the petition be denied. The petitioner's counsel filed timely objections to the report, to which the respondent did not respond, and the matter is now before the Court for a *de novo* review.

I.

The magistrate judge provided a review of the procedural and substantive facts of the case in his report. Neither party objects to the material facts, and the Court adopts that summary here. This case was tried in 1977 when Michigan's law of felony murder provided that any

> murder which was committed during the course of certain enumerated felonies, including robbery, was first-degree murder. Under the felony-murder doctrine in place at the time of petitioner's trial, all parties to an agreement to commit one of the felonies enumerated in the murder statute were liable for a murder committed in furtherance of that planned felony, even though a homicide was not planned.

*Harris v. Stovall*, 22 F. Supp. 2d 659, 666 (E.D. Mich. 1998) (citing *People v. Smith*, 33 Mich. App. 336, 189 N.W.2d 833 (1971); *People v. Goree*, 30 Mich. App. 490, 186 N.W.2d 872 (1971)). That rule changed with the watershed case of *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304 (1980),

which was decided while the petitioner's case was pending on direct appeal. In *Aaron*, the Michigan Supreme Court settled a long-brewing controversy over the elements of first-degree felony murder as that crime was defined theretofore in Michigan jurisprudence, and held that participation in a felony alone will not establish culpability for a murder committed during that felony; rather the State must also prove that the participant acted with "malice," that is, the actual intent to kill or cause great bodily harm, or engaging in dangerous conduct that naturally could cause death or serious injury. However, the state supreme court declared that the new rule announced in that case would be prospective only, and therefore the petitioner did not have the benefit of that change in the law. In fact, the state court of appeals had reversed Weiner's conviction on the basis of jury instructions on the elements of the crime, and the supreme court, after holding the appeal in abeyance pending the decision in *Aaron*, reversed in turn and reinstated the conviction subject to the petitioner's other arguments on direct appeal.

A.

That procedural history sets the stage for the petitioner's first objection: that the magistrate judge improperly considered whether the rule in *Aaron* was retroactive, an issue that was not raised by the respondent, who had forfeited her right to address the merits of the petition. The petitioner insists that the nonretroactivity of that state court decision is an affirmative defense that must be raised or else it is waived. He cites in support of his contention *Schiro v. Farley*, 510 U.S. 222 (1994), in which the Supreme Court declined to entertain the State's argument in a habeas proceeding based on the principle that the Court will not announce or apply a new rule of constitutional law in cases on collateral review. The Court held: "Since a State can waive the [nonretroactivity] bar by not raising it . . . and since the propriety of reaching the merits of a dispute

is an important consideration in deciding whether or not to grant certiorari, the State's omission of any [nonretroactivity] defense at the petition stage is significant. Although we undoubtedly have the discretion to reach the State's [nonretroactivity] argument, we will not do so in these circumstances." *Id.* at 788-89 (citations omitted).

The reference to the nonretroactivity defense, however, pertained to the rule announced in *Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion). "Under *Teague*, new rules [of constitutional law] will not be applied or announced in cases on collateral review unless they fall into one of two exceptions." *Penry v. Lynaugh*, 492 U.S. 302, 313 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002). The rationale for that rule is found in the nature of habeas corpus itself. Justice O'Connor explained:

> "Habeas corpus always has been a collateral remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed."

*Teague*, 489 U.S. at 306 (quoting *Mackey v. United States*, 401 U.S. 667, 682-83 (1971) (Harlan, J., concurring and dissenting)). The *Teague* Court then adopted "two exceptions to [Justice Harlan's] general rule of nonretroactivity for cases on collateral review. First, a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. . . . Second, a new rule should be applied retroactively if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Id.* at 307 (internal quotes and citations omitted).

None of these concerns affect the question of *Aaron*'s nonretroactivity discussed by the magistrate judge. The reason he considered the issue at all was to determine whether the State presented sufficient evidence to support the petitioner's conviction. He applied the familiar standard: "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." R&R at 48 (quoting *Jackson v. Virginia*, 443 U.S. 307, 3189 (1979)). Of course, to make that assessment, and to evaluate the petitioner's other claims challenging the jury instructions, the magistrate judge had to determine exactly the elements of first-degree felony murder under Michigan law at the time of the petitioner's trial in 1977. That is where consideration of *People v. Aaron* became critical, since it was a relevant pronouncement on the State's substantive criminal law that applied in the petitioner's case. The question of its retroactivity *vel non* had nothing to do with federal constitutional law to be applied on collateral review, and therefore *its* nonretroactivity was not an affirmative defense that had to be raised by the respondent.

The crux of the petitioner's claims based on sufficiency of evidence, the adequacy of the main jury instructions, and the confusing nature of the supplemental jury instructions, as those arguments have coalesced in the objections to the magistrate judge's report, is whether Michigan allowed conviction of first-degree felony murder based only on proof that a person participated in the commission (or attempted commission) of one of the enumerated felonies in which death resulted, absent a finding by the jury that the participant also intended death or serious injury, or acted in wanton disregard of the likelihood of that occurring. It is certainly well-settled that the Due Process Clause entitles the petitioner to relief unless the State has obtained the conviction by proving all of the essential elements of the crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358,

364 (1970). Likewise, jury instructions that relieve the State of that obligation or lessen that burden are constitutionally infirm. *Patterson v. New York*, 432 U.S. 197, 215 (1977); *Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979). This Court is satisfied, as was the state court of appeals, that the supplemental jury instructions allowed the jury to convict the petitioner of first-degree murder upon proof that he participated in a robbery in which the victim was killed, absent any proof of malicious intent on the part of the petitioner with respect to the death itself. However, that observation merely begs the question. The State may define the conduct it intends to punish as criminal and prescribe punishments. *See Payne v. Tennessee*, 501 U.S. 808, 824 (1991) (stating that "[u]nder our constitutional system, the primary responsibility for defining crimes against state law, fixing punishments for the commission of these crimes . . . rests with the States . . . subject to the overriding provisions of the United States Constitution'); *see also Whalen v. United States*, 445 U.S. 684, 689 (1980) (noting that under "our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress"). *If* the State defined first-degree felony murder at the time of the petitioner's 1977 trial without including the element of intent to cause death or serious injury, then no due process violation resulted from the State's failure to offer evidence on that element or the trial judge's failure to instruct on it adequately.

At the center of the petitioner's arguments, then, is whether the State defined felony murder in 1977 absent some form of intent regarding the death itself. A related question – whether the State *could* constitutionally define a "capital" crime (Michigan does not allow the death penalty; "capital" crimes are punished by life in prison, in petitioner's case without the possibility of parole) without

the requirement of personal culpability for death being shown – was not presented to the state courts or in the present habeas petition.

Some of the Michigan intermediate appellate court decisions shed light on the former question. For instance, in *People v. Goree*, 30 Mich. App. 490, 186 N.W.2d 872, (1971), the court stated: "If, during the 'perpetration' of an armed robbery, a killing occurs at the hands of the felon or someone acting in concert with him or in furtherance of a common objective or purpose, all the codefendants are guilty of first-degree murder." *Id.* at 494-95, 186 N.W.2d at 875. A few months later, the court of appeals affirmed a conviction based on the common law felony murder rule stating that the question of the required intent was insubstantial. *People v. Smith*, 33 Mich. App. 336, 189 N.W.2d 833 (1971) (per curiam). The court stated:

> The single issue on appeal is that the trial court erred in allowing defendant's plea of guilty to stand where defendant told the Court, after the plea of guilty was accepted but before sentencing, that he did not know that his codefendant, who actually shot decedent, was armed and, therefore, that he could not be guilty of any felonious homicide because the shooting was beyond the scope of the agreement of the two men to commit a robbery only. *It is manifest that the question presented, on which decision of the cause depends, is so unsubstantial as to need no argument or formal submission.* Where two or more persons combine to commit a felony and a murder is committed in furtherance or in the prosecution of that felony, all parties to the agreement to commit the felony are liable for the murder even though a homicide was not planned.

*Id.* at 337, 189 N.W.2d at 834 (emphasis added).

However, despite these pronouncements, the fact that the felony-murder jurisprudence was in a state of confusion was confirmed by the Michigan Supreme Court's introduction in the *Aaron* majority opinion:

> The existence and scope of the felony-murder doctrine have perplexed generations of law students, commentators and jurists in the United States and England, and have split our own Court of Appeals. In these cases, we must decide whether Michigan has a felony murder rule which allows the element of malice required for murder to

>be satisfied by the intent to commit the underlying felony or whether malice must be otherwise found by the trier of fact.

*Aaron*, 409 Mich. at 686-87, 299 N.W.2d at 306. After reviewing the history of the felony-murder rule in England and the United States, and discussing its application by Michigan courts, the state supreme court stated that its understanding of the common law rule "is to recognize the intent to commit the underlying felony, in itself, as a sufficient *mens rea* for murder." *Id.* at 717, 299 N.W.2d at 321. The court then determined that this rule was in effect in Michigan at the time. *Id.* at 722-23, 299 N.W.2d at 324 (stating "[h]owever, our finding that Michigan has never specifically adopted the

doctrine which defines malice to include the intent to commit the underlying felony is not the end of our inquiry. In Michigan, the general rule is that the common law prevails except as abrogated by the Constitution, the Legislature or this Court. This Court has not been faced previously with a decision as to whether it should abolish the felony-murder doctrine. Thus, the common-law doctrine remains the law in Michigan"). The court then weighed the competing considerations surrounding the continued viability of the rule and decided to abrogate it. However, the court held that "[t]his decision shall apply to all trials in progress and those occurring after the date of this opinion." *Id.* at 734, 299 N.W.2d at 329.

The ineluctable conclusion, therefore, is that at the time of the petitioner's trial, the common-law felony-murder rule was in effect, the State was not required to prove that the defendant intended to kill or harm the victim that was killed during the robbery, and the trial court was not required to instruct the jury on the question of malice separate from the intent to commit the underlying felony. This Court must find, therefore, that the magistrate judge was correct when he concluded that no

constitutional error occurred in this case with respect to the sufficiency of evidence, the main jury instructions, or the supplemental jury instructions.

B.

A related argument Weiner raises in his objections that does not appear in his petition, and therefore was not addressed by the magistrate judge, is that Weiner's rights under the Equal Protection Clause were violated by the state court's uneven application of *Aaron*'s non-retroactivity pronouncement. He points to *Meyers v. Yist*, 978 F.2d 417 (9th Cir. 1990), in which the Ninth Circuit held that "[t]he equal protection clause prohibits a state from affording one person (other than the litigant whose case is the vehicle for the promulgation of a new rule) the retroactive benefit of a ruling . . . while denying it to another." *Id.* at 421. Weiner says that in two cases, *People v. Wilder* and *People v. Butts*, the state supreme court conferred the benefit of *Aaron*'s new rule on these defendants even though they were neither awaiting trial for felony-murder nor convicted of that offense after the rule in *Aaron* was announced. *See People v. Wilder,* 411 Mich. 328, 308 N.W.2d 112 (1981); *People v. Butts*, 411 Mich. 1041, 309 N.W.2d 187 (1978).

The Court agrees with the general proposition that "the equal protection clause prohibits *de facto* as well as explicit, or open, unequal and arbitrary treatment," *Meyers*, 978 F.2d at 421, and that "once a state has established a rule it must be applied evenhandedly." *Ibid.* (quoting *La Rue v. McCarthy*, 833 F.2d 140, 142 (9th Cir. 1987)). However, if a state court applies a prospective ruling differently to separate criminal defendants, it need only have a rational basis for doing so. *See City of Cleburne v. Cleburne Living Centr.*, 473 U.S. 432, 446 (1985) (holding that the Court applies rational basis review to state action not affecting a fundamental right or implicating a suspect class).

In *Wilder*, the Michigan Supreme Court explained its rationale for giving the defendant the benefit of *Aaron*'s heightened proof requirement as follows:

> Although the instant case was not argued and submitted together with *Aaron* and its companion cases, leave to appeal was granted on the same day leave was granted in *Aaron*, the question presented was essentially identical to the question in *Aaron* and its companions, and the cases were argued at the same session of this Court. Therefore, we treat this case as a companion to *People v. Aaron* for purposes of applying the rule stated therein.

*Wilder*, 411 Mich at 337, 308 N.W.2d at 114. The supreme court noted that "Butts was a co-defendant with Ronald Wilder at trial. Accordingly, the same relief afforded to Wilder is extended to Butts." *Butts*, 411 Mich. at 1041, 309 N.W.2d at 187.

The Court believes that the supreme court's treatment of Wilder and Butts as equally situated with Aaron, thus enjoying the status as "the litigant whose case is the vehicle for the promulgation of a new rule," *Meyers*, 978 F.2d at 421, constitutes a reasoned explanation for its actions that is sufficient to pass muster under the Equal Protection Clause. The state court's refusal to give the petitioner the benefit of *Aaron*'s prospective ruling does not provide him a basis for habeas corpus relief.

II.

The petitioner's remaining objections focus on the issue for which the Court ordered an evidentiary hearing: whether the defendant's confession was unconstitutionally obtained either because it was involuntary or his right to an attorney as set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Edwards v. Arizona*, 451 U.S. 477 (1981), was violated. The magistrate judge criticized the petitioner for conflating the voluntariness issue with the *Miranda*/*Edwards* violation argument; and he found that the state court decision that the confession was voluntary faithfully applied federal law, the *Miranda*/*Edwards* issue was procedurally defaulted, and, to the extent that

the petitioner's Sixth Amendment claims were not procedurally defaulted, the petitioner's attorneys were not constitutionally ineffective in dealing with these claims in state court. The petitioner objects to these findings and argues that the respondent waived the procedural default affirmative defense and it should not be raised *sua sponte*; the factual determination adopting the police officers' version of the station house encounter over the petitioner's version is erroneous because the magistrate judge failed to account for inconsistencies in the police officers' testimony, and there is no reference to the supplemental record, which contains letters endorsing the petitioner's character; and trial counsel in fact was ineffective for failing to pursue the petitioner's *Walker* hearing testimony that he had asked for a lawyer.

A.

The Court agrees that the respondent has waived the defense of procedural default. A prisoner's procedural default is not a jurisdictional bar to review of claims brought in federal habeas corpus proceedings. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) (holding that procedural default is a defense "that the State is obligated to raise and preserv[e] if it is not to lose the right to assert the defense thereafter"). The State has not raised that defense in timely fashion in this case. The State's "failure to raise the default may operate as a forfeiture of its right to defend on that ground." *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000). Although the Court has discretion to raise the defense on its own, *see id.* at 886-87, given the serious consequences that have inured to the petitioner and the effort and resources that have been expended pursuing this issue, the Court believes that the proper exercise of discretion requires that this defense not be indulged, particularly in light of the State's conduct in this case. *See Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004) (holding that, "[i]n light of the resources that have been expended by the district court and the

serious consequences facing Sowell, and because the Warden did not make this argument to the district court, we exercise our discretion not to reach the documentation-default issue").

B.

The Court also agrees with the petitioner that the magistrate judge was in error in concluding that the purpose of the so-called "*Walker* hearing" in Michigan jurisprudence is solely to determine the voluntariness of a confession. Under federal law, a confession obtained during custodial interrogation may be deemed unconstitutional on at least two grounds: that the confession was involuntary, *see Jackson v. Denno*, 378 U.S. 368, 376-77 (1964); *Colorado v. Connelly*, 479 U.S. 157, 163-65 (1986), and that the detainee was not advised of his rights under *Miranda*. *See Dickerson v. United States*, 530 U.S. 428, 440 (2000). Such determinations generally are made before trial, outside the presence of the jury, at a separate hearing. That procedure was initiated in Michigan by the pronouncement in *People v. Walker (on reh)*, 374 Mich. 331, 132 N.W.2d 159 (1965), and such hearings have come to be known as "*Walker* hearings."

Although the issue raised in *Walker* itself dealt only with the confession's voluntariness – indeed, *Miranda* was not decided until a year later – the prevailing practice that has developed in Michigan courts has been to denominate all hearings challenging the constitutional validity of confessions as "*Walker* hearings." The magistrate judge opined that in Michigan, *Walker* hearings serve the sole purpose of adjudicating the voluntariness of a confession. However, that is not the case. *Walker* hearings are held to determine *Miranda* violations as well as the voluntariness of a confession. *See, e.g., People v. Howard*, 226 Mich. App. 528, 537, 575 N.W.2d 16, 23 (1997) (noting that the defendant's *Miranda* issue raised on appeal was abandoned because he "failed to pursue the issue at the *Walker* hearing that was conducted in this matter"); *People v. Gould*, 61

Mich. App. 614, 620-21, 233 N.W.2d 109, 113 (1975) (noting that "the sole question raised and litigated by defendant at the *Walker* hearing in the lower court was whether he had been given his *Miranda* warnings before or after he made the statements at issue"); *People v. Hopper*, 21 Mich. App. 276, 279-80, 175 N.W.2d 889, 890 (1970) (holding, where the evidence did not demonstrate that *Miranda* warnings were given, that the case would be "remand[ed] for a *Walker* hearing on the question of whether there was a voluntary waiver of right to counsel after being fully informed of his right to have such counsel present at questioning in line with *Miranda v. Arizona*").

Although the magistrate judge was incorrect in his conception of the purpose of a *Walker* hearing, he was correct in his observation that there was no discussion of *Miranda* violations at the petitioner's *Walker* hearing held in the state court. The focus of that hearing was on the voluntariness of the confession, although the petitioner did mention that he had asked for and been denied an attorney. The magistrate judge properly viewed the two issues as distinct; however, the purpose of the referral for an evidentiary hearing was to develop the *Miranda* violation issue as well.

The magistrate judge concluded that the state court's holding that the petitioner's confession was voluntary was not contrary to or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409 (2000). The Court agrees with and adopts that conclusion. A confession is considered involuntary if (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "*because* of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the

Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include whether there was police coercion (a "crucial element"), the length of interrogation, the location of the interrogation, the continuity of interrogation, the suspect's maturity, his education, his physical condition and mental health, and whether the suspect was advised of his *Miranda* rights. *See Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). The state courts properly applied these principles to the facts before it when they found that the confession was voluntary.

The resolution of that issue, however, does not answer the separate and distinct question of whether the petitioner's *Miranda* rights were violated. Although the magistrate judge determined that the *Miranda* violation issue was procedurally defaulted, a procedural defense that this Court rejects for the reasons stated earlier, he did discuss the merits of that claim when deciding whether the petitioner established prejudice under the cause-and-prejudice test. In arriving at his decision, the magistrate judge necessarily considered the testimony offered in the state court and before the magistrate judge on the claim that the petitioner's request for an attorney during custodial interrogation was not honored. His findings with respect to that testimony are pertinent here concerning the merits of the claim.

In *Edwards v. Arizona*, the Supreme Court established a *per se* rule that once a suspect in custody invokes the right to counsel, law enforcement officers may not further interrogate the suspect until counsel has been made available, unless the accused initiates further communication with the police. 451 U.S. at 484-85. The application of this rule in this case revolves entirely on the fact issue of whether the petitioner asked to speak to an attorney during his custodial interrogation on May 18, 1977.

The testimony at the *Walker* hearing and its review by the state court of appeals have been set forth by the magistrate judge and need not be repeated here. Detroit police sergeant Thomas Rossler, a homicide detective, interrogated the petitioner. He did not mention at the *Walker* hearing whether the petitioner asked for an attorney. However, at the evidentiary hearing before the magistrate judge he testified as follows:

> Q. Do you remember if while you were interrogating Mr. Weiner, if he requested an attorney?
> A. As best to my recollection, no, he never did request to have an attorney.
> Q. Okay. What – what was your procedure at that time in questioning criminal suspects – what was your procedure in terms of if the – if the arrested person requested an attorney?
> A. If he requested at attorney?
> Q. Right.
> A. I would have to cease my interrogation and send him back up to the ninth floor holding, and inform my superiors that he wanted a lawyer. At that time I believe that they would take him to court and – on his next appearance and request one for him.
> Q. Okay. So I'm understanding your testimony that if an arrested person requested an attorney, you ceased your interrogation.
> A. I would cease my interrogation, yes.
> Q. And do you know what that practice was based on?
> A. I'm sorry?
> Q. Do you know what – why – why were you required to cease your interrogation at that time, do you know?
> A. No. It was just part of the – my – my procedures.
> Q. Okay. And was that the procedure for all officers in the Detroit Police Department at that time?
> A. I don't –
> Q. Do you know?
> A. – I don't believe that that was a standard procedure for most officers at that time. No.
> Q. But that was your procedure?
> A. That was mine.
> Q. Okay. Mr. Rossler, are you an attorney?
> A. No.
> Q. Have you ever presented yourself as an attorney?
> A. No.
> Q. Did you tell Mr. Weiner that you were an attorney?
> A. No.

> Q. Did you tell him that you would act as an attorney towards him?
> A. No.
> Q. Did you tell him that you were advising him as an attorney would advise him?
> A. No.

Evid. hrg. tr. at 38-40.

The magistrate judge chose to credit this testimony over the contrary testimony of the petitioner. The petitioner in his objections criticizes the magistrate judge's failure to reconcile, or even discount, inconsistencies in Rossler's testimony with his prior testimony and that of his partner, Richard Riddling. Rossler testified at the hearing before the magistrate judge and in 1977 that he took the petitioner's confession, but the written form was signed by Riddling, and the petitioner insists that Riddling is the one who interrogated him. However, the petitioner also contends that it was Rossler, not Riddling, who told the petitioner that he would speak to the petitioner "as an attorney," and it is logical therefore to conclude that if the petitioner made such a request it would have been directed to Rossler. Moreover, the state trial judge considered factual inconsistencies between the versions of the events given at the *Walker* hearing by Rossler and the petitioner and concluded that Rossler was more credible. The state court of appeals affirmed that conclusion. The magistrate judge likewise came to that conclusion, observing that the petitioner did not mention on direct examination at the *Walker* hearing that he asked for an attorney, and the petitioner's testimony in state court was inconsistent with his testimony before the magistrate judge.

The petitioner also tendered several letters from individuals who endorse the petitioner's character as a model prisoner over the past several years, an upright individual who has matured into a responsible individual, and an honest person. This information was received but not discussed by the magistrate judge in his report. The Court has considered the material and accepts it as a good-

faith acclamation of the petitioner's present character. However, the Court does not believe that this evidence tips the credibility balance much with respect to the petitioner's assertions around the time the crime was committed, nor does it shed much light on the events of May 1977. The magistrate judge's conclusion that Rossler – who said the petitioner did not request an attorney – was more credible that the petitioner – who said that he did – is sensible, well-documented, and sound. The Court adopts that conclusion here.

C.

The resolution of the credibility issue ordains the result as to the remaining issues in the case. Since the Court finds that the petitioner did not make a timely request for an attorney during custodial interrogation, there is no violation of the *per se* rule of *Edwards v. Arizona*. Likewise, the petitioner cannot establish prejudice under the second prong of the ineffective assistance of counsel test set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome"). Since the petitioner cannot prevail on that component of the ineffective assistance of counsel test, it is not necessary to assess the quality of trial or appellate counsels' performance. *Cyars v. Hofbauer*, 383 F.3d 485, 491 (6th Cir. 2004) (citing *Strickland*, 466 U.S. at 687) (explaining "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed").

The Court agrees with and adopts the magistrate judge's findings and conclusions with respect to the remaining claims in the petition.

III.

With the exception of the modifications and corrections outlined above, the Court agrees with the magistrate judge's report and recommendation, and the Court adopts it here as modified.

Accordingly, it is **ORDERED** that the petitioner's objections to the report and recommendation are **OVERRULED**.

It is further **ORDERED** that the report is **ADOPTED IN PART**.

It is further **ORDERED** that the recommendation is **ADOPTED** and that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 29, 2005

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 29, 2005.

s/Tracy A. Jacobs
TRACY A. JACOBS